Leroy F. THOMAS, Jr., et al., Appellants,

v.

**HOWARD UNIVERSITY HOSPITAL;**
**Howard University, Appellees.**

No. 93–7095.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1994.
Decided Nov. 22, 1994.

Thomas J. Gagliardo, Silver Spring, MD, argued the cause and filed the briefs, for appellants.

Jeffrey M. Ford, Washington, DC, argued the cause and filed the brief, for appellees.

Before BUCKLEY, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

We begin with a bit of history familiar to students of Hart & Wechsler's THE FEDERAL COURTS AND THE FEDERAL SYSTEM 300–01 (1953), and of their later editions. Section 207(a)(1) of the Fair Labor Standards Act of 1938, commonly known as the "maximum hours provision," entitles an employee who works more than forty hours in a "work-week" to receive from his employer "one and one-half times the regular rate at which he is employed" for such "excess" work. 29 U.S.C. § 207(a)(1). The original Act rendered employers who violated the maximum hours provision automatically liable not only for unpaid overtime compensation, but also for an equivalent amount in "liquidated damages." 29 U.S.C. § 216(b). In the mid–1940's, the Supreme Court construed—or as a later Congress thought, misconstrued—"workweek" to include activities preliminary and incidental to the employee's work. See, e.g., Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 693, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515 (1946); Jewell Ridge Corp. v. Local 6167, United Mine Workers of America, 325 U.S. 161, 170, 65 S.Ct. 1063, 1068, 89 L.Ed. 1534 (1945). This construction retroactively transformed the workweeks of thousands of employees into more than forty hours and laid at the doors of their employers millions of dollars in "wholly unexpected

liabilities" for overtime compensation and liquidated damages. 29 U.S.C. § 251(a). Congress took quick, corrective action, passing the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262, to extinguish those "unexpected liabilities," and to define "workweek" to exclude certain preliminary activities. The Portal-to-Portal Act added another provision, the one with which we are concerned, giving courts discretion to disallow liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.

■ The question here is whether, in the words of § 260, Howard University Hospital "had reasonable grounds for believing that [its] act or omission was not a violation" of the maximum hours provision. The Hospital admitted violating the provision from 1988 to 1990 by (1) miscalculating the "regular rates[s]" of pay of the 625 plaintiff-employees,[1] and then (2) multiplying those erroneously low rates by, in the vernacular, "time and a half" to determine total overtime compensation. An employee's "regular rate" includes shift differentials and Sunday and holiday premium rates, if those differentials and premium rates do not exceed one and one-half times the employee's base rate. 29 U.S.C. § 207(e)(6)–(7). Although the employees' "differentials and premium rates" were not of that magnitude,[2] the Hospital

failed to include them in computing its employees' "regular rate[s]." Instead, it multiplied an employee's base rate by one and one-half and then added the differential or premium rate to this product.[3]

This method of calculation was at odds with the Hospital's own overtime policy, in place since July 27, 1986, when its payroll supervisor issued new timekeeping and coding instructions to Hospital department heads, supervisors and timekeepers. The instructions correctly reflected the requirements of § 207 but, the Hospital explains, those responsible for coding payroll information continued making "coding errors," which led to the violations in this case. While the Hospital agreed to pay the plaintiffs more than $100,000 to cover the resulting underpayment of overtime compensation, it successfully invoked § 260 to avoid liability for an equal amount in liquidated damages.

As to the Hospital's "reasonable grounds" for believing that its acts were not violations of the Fair Labor Standards Act[4]—the second half of the § 260 inquiry—the district court found that the Hospital "was attempting to correct FLSA violations and was implementing procedures which would achieve compliance. The fact that occasional errors may have been made by lower-level employees as these new procedures were being implemented does not impugn the good faith or reasonableness of the University's efforts to comply with the FLSA."

1. This suit follows a 1986 action brought by a different group of hospital employees alleging similar violations. *Anderson v. Howard Univ. Hosp.*, Civil Action No. 86–0376 (D.D.C.1986). The Hospital and the *Anderson* plaintiffs settled in 1986. Some of the plaintiffs in the *Anderson* case are also plaintiffs in this case.

2. From October 1, 1985 to February 5, 1990, the employees were entitled under their collective bargaining agreement to a 10 percent shift differential for evening work (110 percent of the employee's base rate), a 15 percent differential for night work (115 percent of the base rate), and a 25 percent premium rate for Sunday and holiday work (125 percent of the base rate). After February 6, 1990, the evening shift differential was 15 percent, the night shift differential was 20 percent, and the Sunday and holiday premium rate was 25 percent. Because none of these

differentials or premium rates exceeded 50 percent, § 207 required the Hospital to include them in an employee's regular rate when calculating overtime.

3. For example, the Hospital paid an employee with a base rate of $10.00 per hour and a 10 percent shift differential (or $1.00 per hour) $16.00 for each hour of overtime the employee worked. [($10.00/hour × 1.5) + $1.00/hour]. The employee described above should have received $16.50 for each hour of overtime worked [($10.00/hour + $1.00/hour) × 1.5].

4. We pass over the district court's § 260 finding that the Hospital acted in "good faith," a finding resting on the Hospital's issuing its new overtime policy in 1986 after discovering that it was out of compliance with the maximum hours provision.

"Reasonableness" in general is not, however, what § 260 demands. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 465 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). An employer may have a good excuse for its mistake in underpaying overtime compensation. The employer may have acted entirely in "good faith." Liability for the underpayment nonetheless attaches.[5] Liability for liquidated damages follows, unless the employer has a certain kind of excuse—a reasonable belief that its acts or omissions did not violate the law.

A court cannot evaluate the "reasonableness" of an employer's belief that its "act or omission was not a violation" without first identifying the "act or omission." Then, and only then, is the court in a position to ascertain what the employer believed about its acts or omissions, and to evaluate the employer's reasons for so believing. In this case, the "act[s] or omission[s]" were the Hospital's not including shift differentials and premium rates in calculating its employees' regular rates of pay. What did the Hospital believe about those acts or omissions? Did it think that neglecting to make these adjustments to its employees' regular pay rates conformed to the statute? The answer quite clearly is no. The Hospital conceded that failing to include shift differentials and premium rates violated the maximum hours provision—a prudent concession in view of its 1986 timekeeping and coding instructions. Because the Hospital did not maintain that these acts or omissions satisfied the maximum hours provision, the § 260 inquiry is at an end. It is senseless to ask if an employer had reasonable grounds for believing something it did not believe.

We assume, as did the district court, that the Hospital's violations stemmed not from any deliberate action on the part of its management, but from the misfeasance of its lower-level employees. To focus on the manner in which management supervised those who calculated overtime compensation is, however, to miss the point. Even if, through no fault of management, the payroll department blundered, the employer still must make the undercompensated employee whole. *See, e.g., LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263 (5th Cir.1986). The mistake, and thus the violation, are the employer's. So too with § 260. The "reasonable grounds" portion of § 260 does not call upon the court to evaluate who in the employer's chain of command committed the "act or omission." What matters is whether, and why, the employer thought the acts or omissions causing the underpayments did not violate the law.

In most instances an employer will be able to satisfy § 260's "reasonable grounds" requirement only if it has relied on a reasonable, albeit erroneous, interpretation of the Fair Labor Standards Act or of the regulations issued thereunder. *See, e.g., Kinney v. District of Columbia,* 994 F.2d 6, 13 (D.C.Cir.1993); *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 910 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1072 (9th Cir.1990); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 312 (7th Cir.1986); *Laffey,* 567 F.2d at 466. Relief for employers in those circumstances was at the heart of the Portal-to-Portal Act of 1947. At the time, judicial interpretations contrary to "long-established customs, practices, and contracts" had created "wholly unexpected liabilities" for overtime compensation, "including liquidated damages." 29 U.S.C. § 251(a). In actions commenced after § 260's effective date, Congress gave the courts discretion to reduce the liability of those employers surprised by a judicial or administrative interpretation of the Fair Labor Standards Act—employers, that is, who had reasonable grounds for thinking the law was other than it turned out to be. Howard University Hospital is not such an employer, and the district court had no discretion to exercise under § 260.

The judgment of the district court is reversed, and the case is remanded for further proceedings to determine the amount of liq-

5. We assume the employer has not relied on or complied with an administrative interpretation of the minimum wage or maximum hours law. *See* 29 U.S.C. § 259(a).

uidated damages under 29 U.S.C. § 216(b) to which appellants are entitled.