**Kenneth SPEGON, Plaintiff,**

v.

**THE CATHOLIC BISHOP OF CHICAGO, Defendants.**

**No. 97 C 1154.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 8, 1998.

Ernest Rossiello, Chicago, IL, for Plaintiff.

Maureen Murphy, Chicago, IL, for Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This matter is before the Court on Plaintiff Kevin Spegon's ("Spegon") Motion for Attorney's Fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Spegon filed this action against his former employer, Defendant, the Catholic Bishop of Chicago (the "Bishop"), alleging that he was not compensated for overtime wages and was discriminatorily discharged for expressing his opposition to this practice. After accepting the Bishop's offer of judgment for $1,100.00, Spegon's counsel, Ernest T. Rossiello ("Rossiello"), now moves for $7,280.00 in fees and costs. For the reasons set forth below, this Court grants Rossiello's motion for fees and costs in the amount of $752.70.

## BACKGROUND

On February 20, 1997, Spegon filed a Class Action Complaint against the Bishop alleging that during the time that he was employed as a maintenance person at St. Agnes Roman Catholic Church ("St. Agnes"), he was insufficiently compensated for his overtime wages. Specifically, Spegon claimed that St. Agnes was only paying his regular hourly rate for overtime instead of time-and-a-half which he was due under the FLSA and Illinois law. Spegon also claims that he was "discriminatorily discharged from his employment, in whole or in part" for expressing his opposition to the overtime wages he received. Although Spegon's Complaint was styled as a class action, it contained no class allegations.

On April 3, 1997, the parties appeared before the Court for their first status hearing. Maureen Murphy ("Murphy") appeared on behalf of the Bishop and St. Agnes while Rossiello appeared on behalf of Spegon. At the hearing, Murphy represented to the Court:

> We are not disputing the overtime, that $350. We checked the time sheets. And as soon as we were served with the lawsuit, I called Mr. Rossiello and asked why nobody called us before filing. The parish business manager did not realize that she had to pay time and a half. She paid him straight time for the overtime hours, did not realize it. So it's easy to rectify the problem.

Acknowledging the Bishop's dilemma, the Court observed:

> I can't help but say to you that if it was a common practice of people to call up on the telephone and say, you know, this is the problem and what can we do about it, as opposed to making a rush to the courthouse door, I might have a part-time job. That's just an observation.

> \* \* \*

> We have become very litigious in the area that involves fee shifting in particular. It distresses me, and that is no secret to anybody who has ever appeared in this courtroom, because many $350 claims have got fees on them that are in many multiples of 350.

On June 10, 1997, the parties made their next appearance before the Court. After informing the Court that Rossiello had made a $6,600 settlement demand, counsel for the Bishop protested:

> [W]e're not trying to fight this. As I said before, the problem with this case was that no one before filing this lawsuit ever called us to explain the problem. We could have resolved it then … Judge, my predicament is that I am asking a small parish in Chicago Heights to pay $6,600 for a $200 mistake. $6,600 may not be a lot to me or you, but it's a lot to that parish.

Counsel for the Bishop went on to explain that she believed it was "unreasonable" for Rossiello to extract thousands of dollars in attorney's fees for a several hundred dollar

mistake on the part of the parish. The Court suggested that the Bishop make an offer of judgment and dispute the fees with Rossiello at a later date.

The Bishop took the Court's suggestion to heart and made an offer of judgment two days later. *See* Fed.R.Civ.P. 68. The offer of judgment allowed Spegon to take judgment against the Bishop for "$1,100 plus court costs and a reasonable attorney's fee to be determined by the Court." The Bishop's offer of judgment was accepted by Spegon shortly thereafter.

After preliminary matters involving the merits of Spegon's claims were resolved, the real battle began in earnest. Rossiello has filed his motion for attorney's fees asking this Court to award him $7,280 .70 in fees and costs. Rossiello's fees and costs are summarized as follows:

TIME THROUGH JUNE 18, 1997

| | | |
|---|---|---|
| ERNEST T. ROSSIELLO, 13.7 hours at $320/hr. | = | $4,384.00 |
| ASSOCIATE LAWYER, .6 hours at $220/hr. | = | $ 132.00 |
| PARALEGAL TIME, 5.1 hours at $102.50/hr. | = | $ 512.50 |
| EXPENSES OF SUIT | = | $ 195.40 |

TIME BETWEEN JUNE 19, 1997 AND AUGUST 29, 1997

| | | |
|---|---|---|
| ERNEST T. ROSSIELLO, 6.3 hours at $320/hr. | = | $2,016.00 |
| EXPENSES OF SUIT | = | $ 40.80 |
| | | |
| TOTAL FEES/COSTS REQUESTED: | = | $7,280.70 |

Needless to say, the Bishop raises a host of objections to Rossiello's request for fees and costs. Chief among them, the Bishop contends that Rossiello's request is unreasonable both in terms of the hours asserted and in light of the limited success that he achieved in this case.

## DISCUSSION

The Court begins this discussion by noting that it has become extraordinarily troubled by the proliferation of litigation arising from and surrounding the fee-shifting statutes. As Judge Posner observed:

Fee litigation has become a heavy burden on the federal courts. It can turn a simple civil case into two or even more cases—the case on the merits, the case for fees, the case for fees on appeal, the case for fees providing fees, and so on ad infinitum, or at least ad nauseam.

*Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988).

But what is more disturbing than all the time and energy unnecessarily spent on fee litigation is how the courts have become coopted by the lawyers in their insatiable pursuit of attorney's fees. Presently, there is little or no incentive for lawyers in fee-shifting situations to resolve a case before rushing to the courthouse. The sooner the meter begins to run the better. And once the meter is turned on, it becomes extraordinarily expensive to turn it off. It is all too frequently the case that the only obstacle standing in the way of a settlement between a plaintiff and a defendant is the plaintiff's lawyer and his unreasonable demand for fees.

Sadly, the result of this predicament is that defendants are often forced to litigate cases that they would rather settle and plaintiffs are obliged to forgo settlements that they would otherwise accept—all in an effort to secure "reasonable attorney's fees" for the plaintiff's lawyer. The only alternative to this Hobbesian nightmare is for a defendant to settle and accede to the plaintiff's lawyer's demands for fees at as an early a date as possible, thereby avoiding the possibility of a $200 judgment accompanied by a $20,000 petition for fees. Thus, the parties are held hostage and this Court is left feeling that it has become a party to an extortion.

Congress unquestionably had loftier goals in mind when it passed much of the legislation authorizing fee awards. This Court does not question the congressional wisdom behind these statutes, but rather the lawyers who have chosen to hijack these statutes for their own selfish ends. The legislative vision of public rights being vindicated by plaintiffs acting as a "private attorney general," *see, e.g., Newman v. Piggie Park Enters.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), has unfortunately given way to a flood of insignificant claims being litigated in the hopes of large attorney's fees. Ultimately, this Court must rely on its limited discretion and the good faith of the parties to curb these abuses and to ensure that these statutes actually benefit the named plaintiff and society at large.

### A. *Attorney's Fees and Costs—Merits*

It is undisputed that fees to a prevailing party are provided for under the FLSA. 29 U.S.C. § 216(b). The district court, however, has considerable discretion in calculating attorney's fees awards. *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir.1982). In determining the amount of a fee award, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

In *Hensley*, the Supreme Court explained that the most useful starting point for determining the amount of a "reasonable fee" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. This calculation, frequently referred to as the "lodestar" figure, should provide an "objective basis" by which to value a lawyer's services. The Supreme Court emphasized the use of "billing judgment" by lawyers when deciding which hours are "properly billed to one's adversary pursuant to statutory authority." *Id.* at 434, 103 S.Ct. at 1940. The Court also stressed:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Id.* This Court understands the Supreme Court's admonition to mean that attorney's fees must be both reasonable and *necessary*.

### 1. *Reasonable Billing Rate*

A reasonable billing rate is normally arrived at by reference to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). A fee applicant is required to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895–96 n. 11, 104 S.Ct. at 1547 n. 11.

In the instant case, Rossiello claims a rate of $320.00 per hour for himself, $220.00 per hour for his associate and $102.50 per hour for his paralegal assistant. In support of these rates, Rossiello cites this Court to prior cases where he has been awarded similar rates. As this Court has noted previously, "[t]hese awards reflect the considered opinions of other judges of the market value of counsel's services." *Doden v. Plainfield Fire Protection Dist.*, 1996 WL 180073, at *2 (N.D.Ill. April 12, 1996). While the Court is respectful of the opinions of other courts, it will follow its own "considered opinion" in *Doden* where it awarded Rossiello the rate of $280.00 per hour and his paralegal $90.00 per hour.[1] *Id.* For purposes of Rossiello's associate, the Court will accept the considered opinion of Judge Leinenweber who recently awarded her $125.00 per hour—and echoed this Court's billing rates for Rossiello and his paralegal. *Shea v. Galaxie Lumber & Constr.*, 1997 WL 51655, at *6 (N.D.Ill. Feb.5, 1997).

### 2. *Reasonable and Necessary Hours*

The Bishop contends that "virtually all of the hours" alleged to have been spent by Rossiello and his associates "were excessive and unnecessary to resolve the dispute that gave rise to this lawsuit." (Bishop Opp. at 4.) Specifically, the Bishop argues that there was no need to prove an overtime wage violation since St. Agnes, where Spegon worked, never denied that it had mistakenly failed to pay him time-and-a-half for his overtime hours. The only issue that was ever in dispute, other than Rossiello's fees, was the number of overtime hours to which Spegon was entitled.

---

1. Rossiello argues that this rate does not adequately take into account the "current" market rate since these rates were from several years ago. The Court, however, reminds Rossiello that one of the reasons that he received such a high billing rate in *Doden* was because his rate claims went largely uncontested. The Bishop has hotly contested Rossiello's fee in this case and the Court agrees that $320.00 is an overestimation of Rossiello's market value.

Rossiello has presented a signed affidavit to this Court affirming that he "necessarily and reasonably expended" 10.1 hours of time in connection with the prosecution of Spegon's claim—worth $3,232.00 by his estimation.[2] In addition, Rossiello claims that Spegon's claim required 5.1 hours of paralegal time and .6 hours of associate time. This Court cannot agree that this time was both reasonable and necessary.

 Initially, in a reference to his numerous appearances before this Court, Rossiello brazenly asserts that the Court "well-knows, this modest amount of time shows Mr. Rossiello's willingness to compromise this claim at a very early juncture." (Spegon Reply at 3 .) The Court agrees that, for Rossiello, this is a "modest amount of time." The Court also agrees that, for Rossiello, the case was settled at an "early juncture." However, Rossiello's standards of reasonableness and this Court's standards of reasonableness are hardly commensurate. This Court will not condone Rossiello's litigation by terror tactics, and it certainly will not reward them. *See e.g., Doden,* 1996 WL 180073, at *1 ("this matter has brought out the worst tendencies of attorneys [among them, Rossiello] who practice in our courts—pettiness and incivility"); *Avitia v. Metropolitan Club of Chicago,* 731 F.Supp. 872, 880 (N.D.Ill.1990) (Norgle, J.) ("The conduct of [Rossiello] in this case has been, to say the least, disingenuous ... [Rossiello] has persistently engaged in half-truths and misrepresentation of current law when appearing before this court"). Nor will this Court reward the tactics of any attorney who chooses to file a lawsuit first and ask questions later.

This Court accepts the Bishop's unchallenged representation—made on several different occasions—that this entire matter could have been avoided by placing a phone call. In light of the credentials touted by Rossiello to this Court, it is difficult to imagine that he could not have coaxed a $1,100 settlement from the Bishop. No doubt the sticking point would have been coaxing the $7,280.70 in attorney's fees from the Bishop.

Nevertheless, the Supreme Court has been firm that the very nature of attorney fee recovery under the fee-shifting statutes is designed to prevent a "windfall" such as the one sought by Rossiello. *See Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 945–46, 103 L.Ed.2d 67 (1989).

The Court is convinced that the extensive hours billed by Rossiello were not necessary in this case, and it also finds that they were unreasonable. To be specific, the Court does not believe that Rossiello's fee petition, or his affidavit, is accurate. For example, Rossiello affirms that he personally spent 1.6 hours drafting Spegon's Complaint and his Amended Complaint. Nevertheless, upon a closer examination, the Court was troubled to find that the Amended Complaint was nearly identical to another complaint filed ten days earlier by Rossiello with this Court. *See Karounos v. Bismark Hotel. Co.,* 96 C 930. Even if Rossiello himself retyped the Complaint from the *Karounos* case, the Court does not believe that it took him 1.6 hours to do so. This is not the first time that this Court has found one of Rossiello's fee petitions to be "inaccurate." *See Doden,* 1996 WL 180073, at *3. Accordingly, even if the Court were to conclude that Rossiello's time was necessary in this case, it would be unwilling to accept that all of the entries contained in his fee petition were "accurate" or reasonable.

### 3. *Limited Success*

 Once the lodestar amount has been calculated, the Court may adjust the award "in light of the level of success" achieved by the plaintiff. *Hensley,* 461 U.S. at 439, 103 S.Ct. at 1942. Citing *Blanchard v. Bergeron,* 489 U.S. at 87, (quoting *Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694 (1986)), Rossiello argues that "[i]t is of no moment that the judgment entered on June 14; 1996 was a mere $1,100." (Spegon Mot. at 2.) Rossiello maintains that "[i]t is the significance of the overall relief which

---

**2.** The Court will address Rossiello's fees in connection with his fee motions in a separate section.

is critical."[3] (*Id.*) *Rivera,* however, involved a plaintiff who prevailed in a civil rights action against a police department. Thereafter, the plaintiff sought attorney's fees under 42 U.S.C. § 1988. In awarding fees, the Court explained that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." 477 U.S. at 574.

Initially, this Court observes that Rossiello's motion for attorney's fees was not brought pursuant to § 1988—for recovery of civil rights attorney's fees. The Seventh Circuit has warned against "the tendency to treat all attorneys' fees statutes as if they were insignificant variations of § 1988." *Stomper v. Amalgamated Transit Union, Local 241,* 27 F.3d 316, 318 (7th Cir.1994). The *Stomper* court explained that the civil rights statutes have "a unique background and history of interpretation, which cannot be generalized to other statutes authorizing the award of fees." *Id.*

This Court cannot accept Rossiello's analogizing of his FLSA claim to a civil rights action. The fact of the matter is that Rossiello simply succeeded in obtaining a judgment against a local parish church which admitted liability from day one.[4] The Court can find nothing in the record to suggest that St. Agnes' failure to properly compensate Spegon was anything more than an administrative mistake. It escapes this Court how removing thousands of dollars from a local parish coffer for a several-hundred dollar administrative mistake "secures important social benefits that are not reflected in nominal or relatively small damages awards." *See Riverside,* 477 U.S. at 574.

After a careful weighing of the three previously discussed factors, the Court finds that a reasonable and necessary number of hours in this case would be three. The Court is convinced that within three hours, an attor-ney of Rossiello's experience and skill could have met with Spegon, assessed his claim, called the Bishop and negotiated a settlement. The Court can find nothing in the time sheets of Rossiello's associate that was either reasonable or necessary for an attorney of her experience. Most of time billed by her was for simple administrative tasks that easily could have been performed by a full-time secretary. Finally, the Court will award Rossiello one half hour of paralegal time for reasonable and necessary administrative tasks that could not be performed by a secretary.

The Court's award would give a lodestar figure of $840.00 for Rossiello's time and $45.00 for the time of his paralegal—a total of $885.00. As previously discussed, the Court may adjust the lodestar amount "in light of the level of success" achieved by the plaintiff. Accordingly, the Court reduces the lodestar amount by one half. Thus, the Court awards Rossiello attorney's fees of $442.50.

#### 4. Costs

■■■■ Costs under the FLSA include all reasonable out of pocket expenses. *Zabkowicz v. West Bend Co.,* 789 F.2d at 553 (7th Cir.1986). Rossiello seeks costs for filing fees, copying charges, messenger fees and faxing costs. As discussed above, the Court does not believe the $150.00 fee for filing this lawsuit was necessary. The Court has reviewed the remainder of these charges and finds them to be reasonable. Thus, the Court awards costs of $45.40.

### B. Attorney's Fees and Costs—Fee Petition

■■■■ Rossiello also seeks an award of attorney's fees for the time he spent preparing his motion for fees and the time he spent responding to the Bishop's objections to his motion. Specifically, Rossiello contends that

---

**3.** Rossiello also argues for the second time before this Court—relying on the same cases—that the Court has no discretion to reduce his fees here based on limited success. The Court refers Rossiello to its earlier opinion in *Doden,* 1996 WL 180073, at *3 n. 5, and recommends that he refrain from making this argument for a third time.

**4.** Needless to say, Spegon's "class action" and "retaliatory discharge" assertions went silently into the night after the initial shot-gun Complaint.

he spent 9.9 hours of billable time—worth $3,168.00 by his estimation—preparing these papers and his affidavits.

To put this number in context, Rossiello spent approximately the same amount of time preparing his fee petition as he did preparing the merits of the case. Again, Judge Posner aptly observed:

> The fee petitions are marvels of misplaced ingenuity and thoroughness, rehearsing in great detail basic principles well known to the district court and reinforcing our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of case.

*Ustrak*, 851 F.2d at 988. Clearly Rossiello's zeal for the pursuit of his fees in this case was at least as great as his desire to remedy the underpayment of Spegon's overtime wages.

What makes Rossiello's fee request for the preparation of his fee motion even more egregious is the fact that it is "inaccurate" and so overly exaggerated. As discussed previously, the Court is hesitant to rely on any of the billing figures provided by Rossiello after seeing the time he allegedly spent preparing the cookie-cutter complaint in this case. Moreover, the Court is confident that Rossiello's cookie-cutter motion for fees was churned out of his firm's word processor in a similar fashion. With little or no reliable information to draw from, the Court will use the example of reasonableness articulated by the Seventh Circuit in *Ustrak*—1 .6 hours. *Id.* at 988. This figure will be halved based on Rossiello's limited success. Thus, the Court awards Rossiello attorney's fees for his fee petition of $224.00. Rossiello will also be awarded $40.80 in costs for his fee motions.

## CONCLUSION

For the foregoing reasons, the Court grants Rossiello's motion for fees and costs in the amount of $752.70.