Brian UPHOFF and David Damon, individually and on behalf of a class of employees, Plaintiffs–Appellants,

v.

ELEGANT BATH, LTD., Chuck Does It All, Inc., and Charles L. Crosby, Defendants–Appellees.

Nos. 97–2409, 98–1332.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1998.

Decided April 29, 1999.*

---

\* Judge Cummings died on April 24, 1999, after this opinion was written by Judge Bauer and approved by Judges Cummings and Kanne.

Ernest T. Rossiello (argued), Rossiello & Associates, Chicago, IL, for Plaintiffs–Appellants.

Bruce M. Bozich, Kenneth M. Soldat (argued), Bozich & Beran, Palos Heights, IL, for Defendants–Appellees.

Before CUMMINGS, BAUER, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Brian Uphoff ("Uphoff") and David Damon ("Damon") (collectively the "Plaintiffs") filed an action against Chuck Does It All ("CDIA") and Charles Crosby ("Crosby") (collectively the "Defendants"[1]), alleging that the Defendants were liable for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 207(a), 215(a)(2), and 216(b). The Plaintiffs moved for summary judgment on the FLSA claim, arguing that: 1) the Defendants owed the Plaintiffs overtime wages; and 2) the Plaintiffs were entitled to liquidated damages under the FLSA. On May 15, 1997, the district court granted summary judgment with respect to the Plaintiffs' overtime wage claim, but denied summary judgment as to the liquidated damages claim.

On May 27, 1997, the Plaintiffs filed a motion seeking $30,388.05 in attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. § 216(b). On January 22, 1998, the district court awarded $17,119.20 in fees and costs, reducing the requested amount because: 1) the Plaintiffs' attorneys' billing rates were unreasonable; 2) a significant portion of the Plaintiffs' attorneys' billable hours were unnecessary and 3) the Plaintiffs' expert witness fees were not recoverable.

On June 10, 1997, the Plaintiffs filed a motion to amend the district court's judgment, pursuant to Fed.R.Civ.P. 59(e), seeking an award of prejudgment interest and a punitive penalty under Illinois law. The district court denied the Plaintiffs' motion, concluding that the request should have been made prior to judgment. We affirm in part and reverse in part.

## I. BACKGROUND

Crosby owned and operated a company, CDIA, that installed and renovated kitchen and bathroom fixtures. The Plaintiffs were employed as kitchen and bathroom renovators for CDIA. Uphoff and Damon

---

1. The Plaintiffs also named Elegant Bath, Ltd. as a defendant. The district court determined that Elegant Bath was not the Plaintiffs' "employer," as that term is defined under the FLSA and therefore, granted summary judgment in favor of *Elegant Bath*. *Uphoff v. Elegant Bath, Ltd.*, No. 96 C 4645, 1997 WL 285859, at *3–4 (N.D.Ill. May 23, 1997). The Plaintiffs do not dispute this determination on appeal and, therefore, we do not consider Elegant Bath as a defendant for purposes of this appeal.

were hired to work for CDIA in 1993 but were both terminated on July 1, 1996. While employed at CDIA, the Plaintiffs frequently were asked to and did work in excess of 40 hours per week. For each hour actually worked by the Plaintiffs, the Defendants paid the Plaintiffs "straight time" (i.e., their current hourly wage). The paychecks from the Defendants never included "overtime" pay (i.e., time-and-a-half) for hours worked by the Plaintiffs in excess of 40 per week. The actual number of hours worked by the Plaintiffs was recorded by Crosby on "sign-in" sheets, which was then transferred to the Plaintiffs' pay stubs.

According to the Plaintiffs' audit of CDIA's payroll records, Uphoff was owed $4,066.50 and Damon was owed $2,126.07 in overtime wages. The Defendants did not dispute that the payroll records reflected an underpayment of overtime wages to the Plaintiffs in the amounts calculated in the Plaintiffs' audit. But the Defendants asserted that they were not subject to FLSA liability or a liquidated damages penalty because they had adequately compensated the Plaintiffs for their overtime work through numerous cash payments and permissive use of company vehicles, materials, and supplies. The district court rejected the Defendants' argument and held them liable for the entire amount of the overtime wages. However, the district court did not award liquidated damages under the FLSA because it found that the Defendants acted in good faith and with a reasonable belief that they were compensating the Plaintiffs for their overtime hours.

Following the court's judgment, the Plaintiffs moved for $30,338.05 in attorney's fees. The fees were based on a rate of $320 per hour for Rossiello (the Plaintiffs' lead counsel), $220 per hour for Dimopoulos (an associate), $190 per hour for Higgins–Brom and Quello (associates), and $102.50 per hour for paralegal time. In support of the request, the Plaintiffs submitted affidavits from their attorneys, who stated that they worked solely on a contingency basis, but that the rates sought were market rates for each respective attorney based on fee awards that they had received in previous Title VII and FLSA cases. The Defendants did not file affidavits contesting counsels' assertion of their market rate. Instead, the Defendants submitted cases in which Plaintiffs' counsel had received lower hourly rates than those requested in the immediate case.

In determining the appropriate hourly rates for Plaintiffs' counsel, the district court did not adopt the Plaintiffs' requested rates, but instead, applied hourly rates that the court had awarded Plaintiffs' counsel in another recent FLSA case with similar issues. Moreover, after reducing the hourly rates, the district court deducted 8.3 hours of billed time as "unreasonable," thereby reducing the Plaintiffs' requested fee amount from $30,338.05 to $17,119.20.

In addition to legal fees, the Plaintiffs also sought to recover the costs of an accountant employed by the Plaintiffs' counsel to calculate the Plaintiffs' unpaid overtime wages. The district court denied recovery of the accountant's cost, finding that there was no statutory basis to award the cost and that, in any event, the accountant's fees were unnecessary in light of the simplistic nature of the overtime wage calculation.

On appeal, the Plaintiffs argue that the district court erred in: 1) entering summary judgment in favor of the Defendants on the liquidated damages claim; 2) denying their motion to amend the district court's judgment to include prejudgment interest and a state law punitive penalty; 3) reducing the requested attorney's fees from $30,338.05 to $17,119.20; and 4) disallowing other litigation costs.

## II. DISCUSSION

### A. Liquidated Damages and Prejudgment Interest

We consider concurrently Plaintiffs' first two arguments. Section 216(b)

of the FLSA provides that the payment of liquidated damages is mandatory if an employer fails to compensate the employee for overtime wages. The statute sets the amount of liquidated damages as the amount of unpaid overtime compensation owed to the employee, plus an additional equal (doubled) amount. *See* 29 U.S.C. § 216(b). However, the statute also provides:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The employer bears the burden of proving both good faith and reasonable belief. *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir.1998) (citing *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir.1995)). "Although in the final analysis we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling." *Shea*, 152 F.3d at 733. Doubling is the norm, not the exception. *Id.*; *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir.1995).

In this case, the district court found that the Defendants satisfied their burden of acting with good faith and with a reasonable belief, noting:

> It is undisputed by the parties that Defendants gave Uphoff and Damon numerous cash payments as well as access to CDIA vehicles and materials for personal use; Defendants assert that these "facilities" were given to Plaintiffs as compensation for their overtime hours, and, indeed, Uphoff and Damon both admitted in their depositions that the cash payments received from Defendants were "bonuses" for extra work and that they were permitted to use CDIA trucks for their own purposes.

> Thus, although Defendants cannot document the amount and/or the value of the cash and "other facilities" provided to Plaintiffs and are therefore subject to FLSA liability, the Court is confident that Defendants attempted, in good faith, to compensate Uphoff and Damon for their overtime hours and to comply with the FLSA's overtime wage standards. Accordingly, the Court exercises its discretion and awards Plaintiffs single damages.

*Uphoff*, No. 96 C 4645, 1997 WL 285859, at *3.

We do not agree with the district court's conclusion on this issue. Even if we credit the district court's finding of good faith, we have not been presented with sufficient evidence that supports the equally necessary finding of reasonableness of the Defendants' actions.

> Liability for liquidated damages follows, unless the employer has a certain kind of excuse—a reasonable belief that its acts or omissions did not violate the law. A court cannot evaluate the "reasonableness" of an employer's belief that its "act or omission was not a violation" without first identifying the "act or omission." Then, and only then, is the court in a position to ascertain what the employer believed about its acts or omissions, and to evaluate the employer's reasons for so believing.

*Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 373 (D.C.Cir.1994). Here, the "act" was the Defendants' use of cash payments and "other facilities" to satisfy the Plaintiffs' overtime compensation. What did the Defendants believe about this act? Did they think that the cash payments and "other facilities" would serve as overtime compensation to the extent the Defendants deemed sufficient as measured by their own judgment, or did the Defendants believe that the cash payments and "other facilities" would serve as an equivalent

measure of overtime compensation as that required by the statute? Whatever the answer, it is the *Defendants' burden* to show what they intended to achieve through the cash payments and allowance of the "other facilities." *See id.* But, as the district court's opinion points out, the Defendants did not document the amount and/or the value of the cash and "other facilities" provided to the Plaintiffs, but merely presented evidence that cash payments were made and that "other facilities" were provided.

The Defendants attempt to bolster their testimony by offering the Plaintiffs' admission that the Plaintiffs had, in fact, received cash payments and used "other facilities." Although relevant, this evidence does not satisfy the Defendants' burden of showing that they acted reasonably; rather, it only demonstrates that the Defendants attempted to give the Plaintiffs a bonus for their work, but not necessarily the overtime compensation required by the statute. The Defendants have simply failed to present sufficient evidence that the bonuses given to the Plaintiffs were intended to serve as the overtime compensation to which the Plaintiffs were entitled under the FLSA. Accordingly, we conclude that the Defendants did not meet their burden of establishing a reasonable belief in the legality of their actions. The district court, therefore, should have doubled the Plaintiffs' lost overtime wages award to Uphoff, from $4,066.50 to $8,133 and to Damon, from $2,126.07 to $4,252.14, in accordance with § 216(b) of the FLSA.

■ Because we have determined that the Plaintiffs are entitled to liquidated damages, we will not entertain the Plaintiffs' plea for prejudgment interest. Following the rule adopted by the majority of circuits, we hold that "the FLSA does not permit successful plaintiffs to obtain prejudgment interest in addition to liquidated damages because that would enable them to obtain double recovery." *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1102 (8th Cir.1982); accord *Shea,* 152 F.3d at 733; *but see Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089 (3d Cir.1995) (recognizing that the First, Fourth, Fifth, Sixth, Eighth, and Tenth Circuits follow the *Gibson* approach; Second, Third, Ninth, and Eleventh do not). Therefore, we affirm the district court's denial of prejudgment interest.

## B. Attorney's Fees

We next address the Plaintiffs' contention that the district court erred in reducing the requested amount of attorneys' fees from $30,338.05 to $17,119.20. The FLSA mandates that courts award a "reasonable attorney's fee" to prevailing plaintiffs. *See* 29 U.S.C. § 216(b) ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Here, neither the Plaintiffs nor the Defendants contest that the Plaintiffs prevailed in the district court. Thus, the only issue we must consider is whether the fees granted were reasonable.

■ While the award of fees is mandatory, the district court has "wide latitude" in determining the amount of the fee. *Strange v. Monogram Credit Card Bank of Ga.,* 129 F.3d 943, 945 (7th Cir. 1997). Therefore, we review a district court's award of attorney's fees under the FLSA for abuse of discretion. *See Bankston,* 60 F.3d at 1255. Because determining attorney's fees involves factual issues, the review is "highly deferential." *Merriweather v. Family Dollar Stores of Ind., Inc.,* 103 F.3d 576, 583 (7th Cir.1996). Moreover, employing a highly deferential standard of review avoids an extensive second round of litigation over attorney's fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The district court is in the best position to determine the worth of the attorneys practicing before him.

## 1. Reasonable Billing Rate [2]

■■■■ Generally, when calculating attorney's fees, a district court will determine a "lodestar amount by multiplying the reasonable number of hours worked by the market rate." *Bankston*, 60 F.3d at 1255. The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir.1993) (citation omitted). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996) (citation omitted). If the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. *Id.* The next best evidence of an attorney's market rate includes evidence of rates other attorneys in the area charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Id.* at 1310–12. The burden of proving the market rate is on the party seeking the fee award. *See McNabola*, 10 F.3d at 518. However, once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded. *See People Who Care*, 90 F.3d at 1313.

■■■■ The Plaintiffs argue that the court should use the following attorney rates: $320 per hour for lead attorney Rossiello; $220 per hour for associate Dimopoulos; $190 per hour for associates Higgins–Brom and Quello; and $102.50 per hour for a paralegal assistant. In support of these rates, attorney Rossiello submitted a Motion For Attorney's Fees and supporting affidavit to the district court. In the

affidavit, attorney Rossiello states that he is familiar with the Chicago market for attorney fees and that, in his opinion, all of the requested hourly rates are commensurate with each respective attorney's market rate. Rossiello's motion and affidavit also state that his law firm has no hourly fee-paying clients and that he and his associates are paid solely on a contingency basis. In Rossiello's affidavit, he contends that in prior cases, he has been awarded hourly rates ranging from $250 to $345. The affidavit also contains a list of recent cases and orders (only some of which involve FLSA claims) supporting Rossiello's fee contention. Rossiello's affidavit also cites cases and orders regarding the alleged market rates for Dimopoulos and the paralegal, and offers statements of Rossiello's belief as to the market rate of Higgins–Brom and Quello. Dimopoulos offered her own affidavit as to her market rate. None of the Plaintiffs' affidavits provide extrinsic evidence, such as previous fee awards, for attorneys Quello and Higgins–Brom; rather, Rossiello's affidavit merely sets forth Rossiello's belief as to the market rates of these two associates. In response to the Plaintiffs' submissions, the Defendants argue that the requested rates should be reduced to reflect the rates Rossiello, Dimopoulos and the paralegal have been awarded in prior FLSA cases.

The district court determined that the Plaintiffs' requested attorneys' fees were "excessive"and reduced the fee amounts to reflect fee rates that the district court had awarded in a recent FLSA case involving Rossiello, Dimopoulos, and the paralegal. *See Spegon v. The Catholic Bishop of Chicago*, 989 F.Supp. 984 (N.D.Ill.1998) (Judge Marovich) (appeal pending). Pursuant to the court's holding in *Spegon*, the district court in this case awarded the following rates: $280 per hour for Rossiello, $125 per hour for Dimopoulos, $115 per

---

2. This Court has recently been presented with an attorney's fee issue nearly identical to the one currently before this Court. *See LeTourneau v. Pan Am. Fin. Serv., Inc.*, 151 F.3d 1033 (7th Cir.1998) (unpublished disposition). We find the analysis in this unpublished case to be persuasive.

hour for Higgins–Brom and Quello, and $90 per hour for the paralegal.

The Plaintiffs contend that the district court abused its discretion by ignoring the "uncontradicted" evidence that the legal fees were, in fact, what Rossiello claimed them to be. More specifically, the Plaintiffs contend that they satisfied their burden of establishing the market rate for legal services and that the Defendants did not carry their burden of showing why a lower market rate should be awarded. *See People Who Care,* 90 F.3d at 1313. We disagree.

First, despite his assertions to the contrary, Rossiello has no fee paying clients and, therefore, no billing rate that can be presumed to be his market rate. *Id.* at 1310. Thus, we look to the next best evidence of market rate—evidence of rates other attorneys in the area charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Id.* at 1310–12. Here, the Plaintiffs offer evidence of fee awards that Rossiello, Dimopoulos, and the paralegal have received in similar FLSA and Title VII cases as proof of their market rates. The Plaintiffs' evidence of prior fee awards, however, is neutralized by the fact that the Defendants offer evidence of fee awards given to Rossiello, Dimopoulos, and the paralegal in other FLSA cases that are lower than those cited by the Plaintiffs.

■ The Plaintiffs argue that there is glaring distinction between the Plaintiffs' and the Defendants' evidentiary proffers because the Plaintiffs also have offered affidavits from Rossiello, Dimopoulos and Quello attesting to their belief that their market rates are what they purport them to be. These affidavits, however, are of little value, as they are entirely self-serving. An attorney's self-serving affidavit alone cannot satisfy a plaintiff's burden of establishing market value for that attorney's services. *See Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (holding that a fee applicant must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). We therefore do not accept the Plaintiffs' argument that they offered "uncontradicted" or superior evidence to the evidence offered by the Defendants in establishing the market rates.

■ We realize, however, that the crux of the Plaintiffs' argument is their contention that the district court erred by disregarding the Plaintiffs' evidence of market rates and instead basing the rates on market rates awarded to Rossiello, Dimopoulos and the paralegal in *Spegon.* Essentially, the Plaintiffs argue that the district court in this case picked the wrong prior fee awards to rely upon in determining the market rates in the present case. Although we believe that rates awarded to counsel in similar cases constitute evidence of an attorney's market rate, we also believe that "each court should certainly arrive at its own determination as to the proper fee." *People Who Care,* 90 F.3d at 1312 (citing *Tolentino v. Friedman,* 46 F.3d 645, 652 (7th Cir.1995)). Thus, while evidence of fee awards in prior similar cases must be considered by a district court as evidence of an attorney's market rate, such evidence is not the *sine qua non* of that attorney's market rate—for each case may present its own special set of circumstances and problems.

In this case, there is no evidence that the district court ignored any prior fee awards given to the Plaintiffs' counsel. Instead, in an effort to "strive for consistency," the district court adopted the analysis from *Spegon* and awarded Rossiello, Dimopoulos, and the paralegal rates identical to those rates awarded in *Spegon.* In *Spegon,* the district court stated that it was aware of the prior fee awards given to Rossiello, Dimopoulos, and the paralegal and considered those awards to be relevant in its determination of the market value of their respective legal services.

Nevertheless, the court in *Spegon* made its own assessment as to the value of the Plaintiffs' counsel.

In the present case, we believe that the district court did not abuse its discretion in adopting the *Spegon* court's fee awards for Rossiello, Dimopoulos, and the paralegal. The two cases are similar with respect to the determination of the market rates for these individuals. Both cases involved FLSA claims. Both cases involved a determination of the proper fee awards for Rossiello, Dimopoulos, and a paralegal. Both cases were disposed of before the same district court. The fees awards in both *Spegon* and in the present case were handed down within one month of each other. Thus, the fee awards in *Spegon* are more than sufficiently probative of the market rate for Rossiello, Dimopoulos, and the paralegal in the present case. We therefore affirm the district court's determination.

■ As for the market rates for associates Higgins–Brom and Quello, we find that the Plaintiffs have not met their burden of proving the market rate. *See McNabola*, 10 F.3d at 518. Only self-serving affidavits were offered to demonstrate the market rate for these two associates, and as we already have explained, such evidence will not satisfy the Plaintiffs' burden. *Blum*, 465 U.S. at 895 n. 11. Since the Plaintiffs did not satisfy their burden of proving market rates for associates Higgins–Brom and Quello, and because each court is entitled to arrive at its own determination as to a reasonable hourly rate for an attorney's services, (*see People Who Care*, 90 F.3d at 1312), we find that the district court did not abuse its discretion in reducing Higgins–Brom's and Quello's fee award from $190 per hour to $115 per hour.

## 2. Reasonable and Necessary Hours Billed to the Litigation

### a. Hours Expended on the Merits of the Plaintiffs' Claims

■ The Plaintiffs also contend that the district court erred in assessing the number of hours reasonably expended on the litigation. In assessing such a claim, the district court's decision is given great deference. *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir.1988). "By virtue of its familiarity with the litigation, the district court certainly is in a much better position than we to determine the number of hours reasonably expended." *McNabola*, 10 F.3d at 519. When reducing the requested number of hours, the district court should provide "a concise but clear explanation of its reasons." *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986) (citations and quotations omitted). Here, the district court has provided a limited but sufficient explanation and we cannot say that it abused its discretion in reducing the hours requested by the Plaintiffs.

First, the district court reduced the amount of time that the Plaintiffs' counsel billed to their summary judgment motion from 32 hours to 10.66 hours, finding that time spent on the motion was unreasonable considering the simplicity of the subject matter and the quality of the motion. The Plaintiffs attack the trial court's determination, arguing that the district court misunderstands how time consuming it is to file a summary judgment motion, and that the district court "failed to take all the record papers into account." We find these contentions wholly unpersuasive. Contrary to the Plaintiffs' argument, we believe that virtually all the district courts within this Circuit firmly understand the time requirements involved in filing a motion for summary judgment. Furthermore, we find no evidence that the district court failed to take the record papers into account. We cannot say that the district court abused its discretion in reducing the hours.

■ The Plaintiffs next contend that the district court erred by eliminating 4.2 hours of attorney time spent on two Rule 59(e) motions to amend the district court's

May 23, 1997 judgment. Specifically, the Plaintiffs' motions requested the district court to alter or amend its judgment to include: 1) prejudgment interest on the Plaintiffs' back pay awards; and 2) a 2% punitive penalty on the back pay awards allegedly due to the Plaintiffs under the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. In denying the Plaintiffs' motions, the district court held:

> This [c]ourt has reexamined Plaintiffs' motion for summary judgment and has found no mention of, or request for "prejudgment interest" or a "2% punitive penalty." The relief sought by Plaintiff[s] was limited to "overtime wages ... liquidated damages ... costs of the action and reasonable attorneys fees."... If Plaintiffs wanted to argue for prejudgment interest or argue their case under the Illinois Minimum Wage Law, they had ample opportunity to do so in their motion for summary judgment.

Dist. Ct. Order of Jan. 22, 1998. Thus, the district court denied these motions and subsequently reduced the billable hours corresponding to the time billed for these motions to amend. In reducing the billable hours, the district court held:

> [The Plaintiffs' post trial] motions seek to alter the judgment in ways that either could have or should have been presented to the [c]ourt in Plaintiffs' initial summary judgment motion.... The [c]ourt can find no legitimate reason why Defendants should be forced to bear the expense of these after-thought motions when the judgment has already been entered in Plaintiffs' favor. To allow costs·for these types of motions would only encourage prevailing parties to file frivolous motions to alter or amend the judgment ad nauseam with the knowledge that Defendants will foot the bill.

*Uphoff v. Elegant Bath, Ltd.*, No. 96 C 4645, 1998 WL 42312 at *3 (N.D.Ill. Jan.23, 1998).

 We agree with the district court. We do not believe that a prevailing plaintiff in a FLSA case should be able to stick a defendant with attorney's fees that were incurred by the Plaintiffs' filing of untimely and improper motions—which is precisely what happened in this case. Rule 59(e) may not be used to raise novel legal theories that a party had the ability to address in the first instance. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995) (citing *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)). As the district court points out, the Plaintiffs did not move for prejudgment interest and the 2% punitive penalty until after the district court entered summary judgment. The Plaintiffs do not dispute this finding. Both motions are untimely under Rule 59(e).

 The Plaintiffs counter the district court's determination on prejudgment interest by citing *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir.1989), for the proposition that "prejudgment interest should be presumptively available to victims of federal law violations." *Id.* at 436. We do not disagree with this proposition but we note that it is still subject to the requirements of Rule 59(e). "[P]rejudgment interest, unlike post-judgment interest, normally is considered an element of the judgment itself, that is, of the relief on the merits, and hence governed by Rule 59(e)." *Healy Co. v. Milwaukee Metro. Sewerage*, 60 F.3d 305, 308 (7th Cir.1995) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989)). Thus, prejudgment interest is presumptively available to victims of federal law violations so long as the requirements of Rule 59(e) have been complied with. Here, the Plaintiffs should have requested the prejudgment interest *prior* to judgment, but they did not.

Because both motions were untimely, the attorneys' time spent pursuing these claims were properly disallowed. Accordingly, we find that the district court did not abuse its discretion in reducing 4.2 hours of time billed by the Plaintiffs' attorneys in preparing the motions to alter or

amend the district court's May 15, 1997 order.

### b. Hours Expended on the Preparation of Attorney Fee Motions

 The Plaintiffs also challenge the district court's determination of the number of hours reasonably expended in connection with the preparation of the fee request in this case. Here, the Plaintiffs sought compensation for 9.9 hours of attorney time in connection with the preparation of the attorney's fee motions. The district court determined that the Plaintiffs' attorneys' fee request was "unreasonable" and, therefore, reduced the billable hours to 1.6. In making this reduction, the district court cited this Court's decision in *Ustrak*, in which we noted that 1.6 hours expended on an attorney's fee request preparation was reasonable. *Ustrak*, 851 F.2d at 988. Our holding in *Ustrak*, however, was actually based on our holding in *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir.1988), and, therefore, we must look to *Kurowski* to capture the essence of this Court's position. In *Kurowski*, we noted that 1.6 hours billed to the preparation for an award of attorney's fees was reasonable in light of the approximately 140 hours of time that the attorneys spent litigating the merits of the case. *Id.* at 776.

Here, the Plaintiffs' attorneys allegedly spent just under 100 hours litigating the merits of the case. In keeping with this Court's decisions in both *Ustrak* and *Kurowski*, the district court reduced the hours for the preparation of the request for an award of attorney's fees to 1.6. We think that this reduction is reasonably related to the number of hours spent litigating the merits of the case. Therefore, the district court's reduction did not constitute an abuse of discretion.

### C. Other Litigation Costs

 The Plaintiffs also appeal the district court's decision to deny recovery of $1,725 in costs from a non-testifying accountant. The award of costs is the type of discretionary ruling to which appellate courts should give virtually complete deference. *Estate of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir.1992). Under 29 U.S.C. § 216(b), the FLSA fee shifting provision, a prevailing plaintiff may be reimbursed for "a reasonable attorney's fee ... and costs of the action." The Plaintiffs contend that § 216(b) allows recovery of non-expert accounting fees for the audit calculating the Plaintiffs' overtime wages.

The statute at issue here, § 216(b), does not provide explicit statutory authority for the recovery of expert witness fees; it provides for the shifting of "reasonable attorney's fees ... and the costs of the action." 29 U.S.C. § 216(b). Costs are defined in 28 U.S.C. § 1920 and do not include expert witness fees unless the expert is appointed by the court. 28 U.S.C. § 1920(6). The Plaintiffs argue, however, that the accountant's services were non-testimonial and, therefore, are not akin to the services of an expert witness. Instead, the Plaintiffs ask this Court to characterize the accountant's services as costs for obtaining the overtime wage accounting report, thus making the fee a cost within § 216(b). We are not persuaded by this argument, and, therefore, hold that the Plaintiffs' accountant was a non-testifying expert, and, as such, the accountant's fees incurred are non-recoverable. *See Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 596–97 (10th Cir.1992) (holding that a party's nontestifying expert fees in a FLSA claim are not recoverable as "costs" under § 216(b), absent an express statement in the statute that the expert's fees may be awarded). The district court did not abuse its discretion in denying the recovery of fees that accrued from services of the non-testifying expert accountant.

### CONCLUSION

For the foregoing reasons, we REVERSE in part and AFFIRM in part. The parties shall bear their own costs of this appeal.