In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-4267

JEAN SCHLACHER, et al.,

*Plaintiffs-Appellants,*

*v.*

LAW OFFICES OF PHILLIP J. ROTCHE & ASSOCIATES, P.C.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-02844—**Milton I. Shadur**, *Judge*.

ARGUED JULY 8, 2009—DECIDED AUGUST 3, 2009

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Plaintiffs Jean, Alfred, and Teri Schlacher sued the defendant, a debt-collection law firm, for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and, within three months of filing their complaint, they accepted offers of judgment totaling $6,500. The plaintiffs, who were represented by four attorneys from three different law firms, sought attorney's fees of $12,495 and costs of $437.70. The

district court awarded $6,500 in fees and costs, explaining that the unnecessary use of multiple attorneys had led to excessive billing in a straightforward, short-lived case. We affirm.

## I. BACKGROUND

After Jean Schlacher was delinquent on a payment for a root canal, her dentist, represented by the Law Offices of Phillip J. Rotche, sued Jean and her husband, Alfred, in state court. Judgment was entered for the dentist, and the Schlachers were required to make monthly payments of $14 until the remaining debt was paid. When they were late on their first payment, Jean received a harassing phone call from an employee of Rotche's, who accused her of being "retarded" and led her to believe that she would be jailed for failing to make the payment. Jean's daughter, Teri, called Rotche's office hoping to assuage her mother's fears, and the same employee threatened to report her to the police, recorded the conversation without her knowledge, and followed up with a threatening letter.

Hoping to halt these abusive collection practices, the Schlachers sought legal assistance and were rejected by more than half a dozen attorneys before retaining Colleen McLaughlin, who specializes in labor and employment law and consumer-contract disputes. McLaughlin recognized that the Schlachers had a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, but, because the statute of

limitations was about to expire and her caseload was heavy, she enlisted Dmitry Feofanov, a consumer-protection attorney, who, in turn, contacted Curtis Warner, an FDCPA specialist. With a fourth lawyer (an associate of McLaughlin's), they together investigated the case and filed suit. Within three months, and before any discovery, the plaintiffs accepted offers of judgment from the defendant totaling $6,500: $1,000 (the statutory maximum, *see* 15 U.S.C. § 1692k(a)(2)) to each plaintiff, plus an additional $3,000 to Jean, and $500 to Teri, for actual damages.

After the parties' efforts to negotiate a reasonable award of attorney's fees were unsuccessful, the plaintiffs moved to compel the defendant to produce its own billing records. *See* N.D. ILL. LOCAL R. 54.3(d)(5). The district court denied the motion because the case settled too early for the defendant's billing to be relevant. At a hearing on the motion, the court explained its approach to the anticipated fee petition in this case. First, it observed that the lawsuit was resolved "in just a couple of months," and that the involvement of multiple attorneys here necessarily created "a substantial amount of overlap." Viewing the case as a "one-lawyer lawsuit," the court warned the plaintiffs that it would ask "[w]hat kind of time would have been spent" by one competent lawyer. That, the court concluded, would be "the measure of what reasonable is in terms of time."

The plaintiffs filed a fee petition seeking $437.70 in costs and $12,495 in attorney's fees for 41.6 hours of work, divided as follows:

| Attorney | Hourly Rate | Hours | Total Fees[1] |
|---|---|---|---|
| Curtis Warner | $260/285[2] | 20.9/1.6 | $5,899 |
| Dmitry Feofanov | $375 | 4.7 | $1,762.50 |
| Law Offices of Colleen McLaughlin: | | | |
| ~Colleen McLaughlin | $425 | 8.7 | $3,697.50 |
| ~Elissa Hobfoll (third-year associate) | $250 | 3.7 | $925 |
| ~Paralegal | $100 | 2 | $200 |

They supported the requested rates with their own declarations of market rates, copies of retainer agreements with other clients, and other evidence, but, with the exception of Warner (the FDCPA specialist), none of the attorneys presented evidence that they had received

---

[1] This chart reflects the breakdown that plaintiffs presented to the district court, but their math was shoddy. They represented Warner's total fees as $5,899, but we calculate $5,890, and, although they calculated the total fees from McLaughlin's office as $4,833.50, the figure should be $4,822.50. Thus, the total fees requested should have been $12,475.

[2] Warner increased his billing rate during the course of the litigation.

their proffered rate in an FDCPA case. The four lawyers billed for time that they all spent investigating and re-searching the plaintiffs' claims, drafting the complaint, filing and arguing a motion to strike one of the defendant's affirmative defenses, researching legal issues related to the offers of judgment, and performing legal research in response to the defendant's threat to move to strike the acceptances and seek sanctions against the plaintiffs.

The defendant made detailed objections to both the rates and the hours billed. It did not contest the costs of $437.70 or the two hours of paralegal work, but asserted that the attorney rates were unreasonable and proposed instead a $250/hour rate for McLaughlin, Feofanov, and Warner, and $195/hour for Hobfoll. The defendant also objected to the hours requested for the attorneys as ex-cessive and identified 16.2 of the 39.6 hours that it believed were unnecessary or duplicative. Specifically, the defendant identified several instances in which McLaughlin and Warner had billed for the same task, multiple billing entries for internal communication, and billing entries for research that was either premature or unrelated to the plaintiffs' FDCPA claims. They thus offered to pay $5,885 in fees and $437.70 in costs, for a total of $6,322.70.

At the hearing on the fee petition, the court reiterated its view that the case was "essentially a one-lawyer law-suit." While acknowledging the possible efficiencies of using multiple lawyers in some cases, the court explained that, in this case, "the multiplication of time that was

involved by the fact of the multiplication of counsel just does not justify the kind of request that's involved here." Evidently because only Warner was an FDCPA specialist, the court also was troubled by the apparent "training on the job" in the case. Further, the court was critical of McLaughlin and Feofanov for not relinquishing the case entirely to Warner, explaining that "it doesn't make a lot of sense for a $500-an-hour lawyer to do work that might be performed by a $200-an-hour lawyer." After defense counsel asserted that a reasonable award for fees would be around $6,400, the court noted that the proposed figure was "coincidentally" almost equivalent to the amount recovered by the plaintiffs and concluded, "It seems to me that a figure that roughly equates to what the plaintiffs themselves recovered seems more reasonable." The district court then sustained the defendant's objections to the petition and awarded $6,500 for attorney's fees and costs to be divided among counsel as they saw fit.

## II. ANALYSIS

Plaintiffs who prevail under the Fair Debt Collection Practices Act are entitled to an award of costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(3); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended. *Hensley*

*v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997). The district court must provide a clear and concise explanation for its award, and may not "eyeball" and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In light of the district court's greater familiarity with the litigation, we review an award of attorney's fees under a highly deferential abuse-of-discretion standard. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

On appeal, the plaintiffs argue first that the district court abused its discretion when it concluded that "a figure that roughly equates to what the plaintiffs themselves recovered seems reasonable." As the plaintiffs point out, we have cautioned that fee awards "should not be linked mechanically to a plaintiff's award," *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991), and that "[i]t cannot be the case that the prevailing party can never have a fee award that is greater than the damages award," *Deicher v. City of Evansville*, 545 F.3d 537, 546 (7th Cir. 2008). Thus, the plaintiffs argue, the district court

committed an error of law in awarding a fee that was directly proportional to their damages recovery.

The plaintiffs' argument, however, is persuasive only when the district court's comment is read out of context. The court did not settle on a $6,500 fee award simply because it mirrored the plaintiffs' damages. Instead, the court explained repeatedly that it was reducing the requested fee because the collaboration among four attorneys had inevitably led to duplicative work and excessive billing. Further, although the court observed that a fee award roughly equivalent to the plaintiffs' damages recovery seemed reasonable, it explained that the figures were only "coincidentally" equivalent. And, in any event, we have explained that, although there is no rule *requiring* proportionality between damages and attorney's fees, a district court may consider proportionality as one factor in determining a reasonable fee. *Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000).

The plaintiffs next challenge the $6,500 fee award because the district court did not specifically enunciate the hourly rates or number of hours it had used to calculate that figure or specify a lodestar amount. A district court facilitates appellate review by making specific findings en route to a fee calculation, and therefore we have reversed when we could not discern whether the district court arrived at its fee award by using the proper factors. *See Eddleman*, 927 F.2d at 317-20. But we need not automatically reverse a fee award in the absence of explicit findings about rates and hours. *See Small*, 264

F.3d at 709 (approving fee award lacking "detailed explanation" where district court simply accepted defendant's objections to billed time); *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir. 1984) (explaining that there is no "Procrustean bed to which every fee proceeding must be fitted despite its actual dimensions"). When substantial fees are at stake, the district court must calculate the award with greater precision. *See Vukadinovich v. McCarthy*, 59 F.3d 58, 60 (7th Cir. 1995) (explaining that "proportioning of formality to stakes is a general principle of the law" that applies to attorney's fee awards); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 570 (remanding because district court made substantial cuts to $9 million fee request without sufficient explanation, but approving another court's "meat-axe approach" to fee petition in case where only $6,000 in fees were at stake); *Lenard v. Argento*, 808 F.2d 1242, 1247 (7th Cir. 1987) (explaining that less elaborate findings are required when a fee request is for "only a few hundred or a few thousand dollars"). But when fees are less substantial, we may affirm so long as the district court exercised its discretion in a manner that "is not arbitrary and is likely to arrive at a fair fee." *See Evans v. City of Evanston*, 941 F.2d 473, 476-77 (7th Cir. 1991); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986).

Although the district court could have further elaborated how it calculated the precise fee award by specifying the lodestar amount and which time entries were excessive, the reasons for the court's ultimate fee award are apparent from the record. *See Small*, 264 F.3d at 709. First, the court expressed its skepticism towards the requested hourly rates. It explained that it made little

sense for high-priced attorneys such as McLaughlin and Feofanov to continue billing in the case after involving Warner, who was both less costly and the only FDCPA specialist. After determining that the regular billing rates of McLaughlin and Feofanov overstated their value in this straightforward case, the district court was within its discretion to lower their rates. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 n.16 (7th Cir. 1982). And because the only evidence of the market rate for the type of work involved in this FDCPA case was the evidence supporting Warner's proposed rate, it was reasonable for the district court to apply roughly this rate to McLaughlin and Feofanov, as the defendant had suggested. *See Mathur*, 317 F.3d at 743 (explaining that, if attorney does not provide evidence of her billing rate for comparable work, district court may look to evidence of what other attorneys in the community charge for that work). Similarly, with respect to Hobfoll, a third-year associate at McLaughlin's firm, the only evidence to support her requested rate of $250/hour was two retainer agreements from employment-law cases. Because this did not meet the plaintiffs' burden of demonstrating Hobfoll's market rate for FDCPA work, and Hobfoll had been practicing for only three years, the district court was within its discretion to lower the rate accordingly. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (explaining that when plaintiff does not meet its burden of proving counsel's market rate, district court is entitled to make its own determination of reasonable hourly rate).

Second, the district court referred to factors permissible in reducing the billed time: it observed that this was an uncomplicated, low-stakes case that settled within three months of filing and without discovery. The court concluded that it was unreasonable to require the defendant to pay for the time that four attorneys had collectively put into the case because their work necessarily overlapped and one competent attorney would have sufficed. This conclusion was not an abuse of discretion. Though efficiency can sometimes be increased through collaboration, *see Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008), overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees. *See Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995); *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism."); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Here, the district court appears to have done that. The defendant submitted detailed objections to the hours billed, identifying precisely which entries were excessive or redundant. The district judge expressly sustained those objections, thereby implicitly finding that it was reasonable to compensate the four attorneys collectively for only about twenty-three of the nearly forty hours of claimed work. When added to the undisputed paralegal fees and costs, the total came to $6,322.70, which the district court apparently rounded up to $6,500. Although greater detailed findings in calculating the fee award might have been

required in a higher-stakes case, the district court arrived at a fee that was reasonable in relation to the difficulty and stakes of this case, *see Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995), and provided an explanation that was "limited but sufficient" to enable us to determine that it did not abuse its discretion, *see Small*, 264 F.3d at 709; *Uphoff*, 176 F.3d at 409.

Finally, the plaintiffs argue that the district court abused its discretion in denying their motion to compel the defendant to produce its counsel's billing records, as required by Local Rule 54.3. We review a district court's enforcement of its own rules only for abuse of discretion. *Jessup v. Luther*, 227 F.3d 993, 999 n.5 (7th Cir. 2000). The district court concluded that enforcing Local Rule 54.3 would needlessly "multiply time for everybody" because the defendant's attorney's fees were irrelevant in a case that had been resolved so quickly. This conclusion was neither irrational nor unreasonable and was therefore a proper exercise of discretion.

## III. CONCLUSION

Accordingly, the judgment of the district court is AFFIRMED.