# Illinois Official Reports

## Appellate Court

---

### *Robinson v. Point One Toyota, Evanston*, 2017 IL App (1st) 152114

---

| | |
|---|---|
| Appellate Court Caption | EMMA ROBINSON and LATANYA KEMP, Plaintiffs, v. POINT ONE TOYOTA, EVANSTON, RIVER OAKS TOYOTA and TOYOTA MOTOR CREDIT CORPORATION, Defendants (Latanya Kemp, Plaintiff-Appellant, v. Toyota Motor Credit Corporation and River Oaks Toyota, Defendants-Appellees). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2114 |
| Filed | March 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 95-M3-3372; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph A. Longo, of Longo & Associates Ltd., of Mt. Prospect, for appellant.<br><br>Thomas M. Crisham, David J. Sullivan, Clare J. Quish, of Schuyler, Roche & Crisham, P.C., of Chicago, for appellees. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1 More than 20 years of litigation and three appeals later, this case returns to us to review the circuit court's award of attorney fees and costs to plaintiff Latanya Kemp (Ms. Kemp) on her claim under the federal Consumer Leasing Act of 1976 (CLA) (15 U.S.C. §1667a (1994)). The sole issue on appeal is whether the circuit court erred in its determination of the amount of reimbursable attorney fees and costs it awarded to Ms. Kemp.

¶ 2 Ms. Kemp challenges the award on several grounds. For clarity sake, we address Ms. Kemp's arguments as follows: (1) whether the circuit court applied the wrong methodology in calculating the amount of reimbursable attorney fees; (2) whether the circuit court erred when it (a) reduced the amount of costs requested by Ms. Kemp, (b) denied her request for attorney fees incurred for the fee petition proceeding, and (c) arbitrarily reduced her attorney fees request; and (3) whether the circuit court erred when it failed to award fees for the appellate proceedings.

¶ 3                                     BACKGROUND
¶ 4                                  I. Litigation History

¶ 5 This court's prior opinions, as well as the opinion of our supreme court, provide a detailed factual background to this litigation. See *Robinson v. Toyota Motor Credit Corp.*, 315 Ill. App. 3d 1086 (2000) (*Robinson I*); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (2002) (*Robinson II*); *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889 (*Robinson III*). We will confine our recitation of the facts to those pertinent to the issues raised in the present appeal.

¶ 6 Beginning with their original complaint filed in 1995, the plaintiffs, Ms. Kemp and Emma J. Robinson (Ms. Robinson or collectively, the plaintiffs), sought damages and attorney fees and costs for violations of federal and state law related to the motor vehicle leasing agreements they entered into with the defendants, Point One Toyota, Evanston; Toyota Motor Credit Corporation; and River Oaks Toyota. In their complaint and amended complaints, the plaintiffs alleged that various provisions of the motor vehicle leases violated the CLA, the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)), and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 1992)). The plaintiffs also sought certification as a class action. In addition to her joint CLA claims with Ms. Robinson, in the first amended complaint, Ms. Kemp alleged an individual claim under the CLA based on the failure to disclose the actual amount of the sales tax owed under her vehicle lease.

¶ 7 By 2011, all that remained of their lawsuit were the plaintiffs' joint CLA claims and Ms. Kemp's individual CLA claim. Following the filing of a third amended complaint and a hearing on the parties' cross-motions for summary judgment, the circuit court granted summary judgment to the plaintiffs on their CLA lease termination and itemization of other charges claims and on Ms. Kemp's CLA individual claim. The court granted summary judgment to the defendants, TMCC and River Oaks Toyota (collectively TMCC)[1] on the plaintiffs' default penalties claim. *Robinson III*, 2012 IL App (1st) 111889, ¶ 11. Following an

_____
[1]Point One Toyota, Evanston was not a party in *Robinson III* and it is not a party in this appeal.

evidentiary hearing, the circuit court denied the plaintiffs' request for actual damages on their joint CLA claims but granted actual damages to Ms. Kemp on her individual CLA claim. The court awarded Ms. Robinson statutory damages of $1000, and Ms. Kemp $1596, in statutory and actual damages based on the failure to disclose. Ms. Kemp's award reflected a reduction of the $500 set-off she received from defendant Point One Toyota, Evanston. *Robinson III*, 2012 IL App (1st) 111889, ¶ 12. The circuit court awarded the plaintiffs $113,280 in attorney fees and $420 in costs. *Robinson III*, 2012 IL App (1st) 111889, ¶ 13. The plaintiffs appealed, and the defendants cross-appealed.

¶ 8       On review, this court held that the defendants were entitled to summary judgment on all of the plaintiffs' joint claims under the CLA. We vacated the damages and attorney fees and costs awarded to the plaintiffs on their joint CLA claims. We affirmed the actual and statutory damages award to Ms. Kemp on her individual CLA claim. The case was remanded to the circuit court for a hearing on attorney fees and costs but only as to Ms. Kemp's individual CLA claim. *Robinson III*, 2012 IL App (1st) 111889, ¶ 84.

¶ 9                              II. Proceedings on Remand to the Circuit Court
¶ 10                                      A. The Fee Petition
¶ 11      Ms. Kemp sought an award of attorney fees in the amount of $1,074,163, based on 2719.4 hours and at a rate of $395 per hour, and an award of costs in the amount of $11,328.74. In response, TMCC maintained that the attorney fee award should be based on a rate of $300 per hour for the 10.5 hours that could reasonably be said to have been spent on Ms. Kemp's single successful CLA claim.

¶ 12                                  B. The Circuit Court's Ruling
¶ 13      On June 19, 2015, the circuit court issued its memorandum opinion and order. After reviewing the history of the litigation, the court noted that despite the small amount of her recovery, Ms. Kemp was entitled to "reasonable" attorney fees under the CLA. 15 U.S.C. § 1640 (1994).

¶ 14      The circuit court observed that such amount was determined by " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' " or the lodestar figure. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While the Supreme Court in *Hensley* recommended applying the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989), the circuit court noted that its more recent decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), had questioned the usefulness of the *Johnson* factors. See *Perdue*, 559 U.S. at 553 (the Court held that the lodestar figure included most if not all the relevant factors for determining a reasonable attorney fee).

¶ 15      The circuit court recognized that losing on certain claims did not prevent a party from being a prevailing party and entitled to attorney fees. *Hensley*, 461 U.S. at 434. The court distinguished the failed joint CLA claims from Ms. Kemp's individual CLA claim, finding that it fit what the Court in *Hensley* described as a "distinctly different claim[ ]." *Hensley*, 461 U.S. at 434. The circuit court determined that to allow fees to be recovered for Ms. Robinson's claims only because of the success of Ms. Kemp's individual CLA claim, which was not even at issue, was "not only illogical, but clearly against Congress's intent in limiting attorney's fee

awards to successful claims." In light of the total lack of success, the court ruled that no time after June 2011 would be compensated.

¶ 16    The circuit court awarded the 10.5 hours, which TMCC identified as work on Ms. Kemp's claim. The court determined that between 1995 and 1996, 7.6 hours were specifically devoted to her claim. The circuit court determined that Ms. Kemp was entitled to be compensated for time expended in the circuit court in 1998 contesting the dismissal motion, which included her sales tax claim, and in the first appeal since the appeal was "a necessary step" toward preserving her claim, but not the appeal to the supreme court, since the plaintiffs' appeal was solely based on the unsuccessful claims. Since the sales tax issue was a minor one in view of the complex issues involved in this case, the court found 25 hours compensable.

¶ 17    The circuit court determined that TMCC's 16-year delay in stipulating as to the validity of Ms. Kemp's individual CLA claim required compensation for some but not all the hours sought. To compensate for the effort to prompt the situation and the summary judgment on Ms. Kemp's claim, the court awarded 10% of the hours requested or 33.3 hours, between 2008 and the 2011 appeal (*Robinson III*). The circuit court found a total of 76.4 hours was reasonably necessary for Ms. Kemp's individual CLA claim.

¶ 18    The circuit court calculated the attorney fees at the $395 per hour rate requested by Ms. Kemp's attorney, noting that it had already removed the unsuccessful and unreasonable hours. The court stated that the hourly rate included overhead, which was "standard." The court refused to order reimbursement of costs incurred for faxing, mailing, photocopying, binding, "or other expenses in bringing this case." The court further refused to order any reimbursement for costs incurred since the appeal of the June 10, 2011, order, since the appeal was completely unsuccessful.

¶ 19    The circuit court summarized its findings as follows:

> "Having reviewed Plaintiffs' fee petitions, all briefs and documents filed by both sides for the fee petition, the record of this case, and having taken into account, among other things, the nature of this case, the expertise of legal counsel, the amount involved, and the results obtained, the court finds the amount of time spent by Plaintiffs' counsel vastly exceeds what is reasonable. Further, even that amount awarded in the previous hearing would now be unreasonable given Plaintiffs' continued losses. The court thus rejects the inclusion of any compensable time since the last appeal, due to Plaintiffs' astonishing lack of success there. The time spent between 1995 and 2008 attempting to certify a class of two-time opt-outs is similarly rejected as unreasonable expense. All work for the joint claims that were lost on the most recent appeal is considered both severable and severed from the successful claim and therefore is not compensated. This includes the appeal to the supreme court; despite the fact that the plaintiffs 'won' there, it was only on reversing the dismissal of the unsuccessful claims, the last of which ultimately failed on the second appeal.
>
> What is compensable is 10% of the time involved with the first appeal in which the dismissal of [Ms. Kemp's] successful tax claim was reversed and 10% of the time since this case was transferred to the municipal district as well as all work considered to be put distinctly towards the tax issue. In total, the court awards $30,178 in attorney's fees for 76.4 hours worked at $395 per hour. The court also awards all Cook County filing fees that are unrelated to the failed appeals as well as the costs of service of process. This amounts to nearly nineteen times the recovery of [Ms. Kemp], clearly

- 4 -

disproportionate to the amount in controversy, but also 'roughly proportional' to what vindication of [Ms. Kemp's] rights could be considered as reasonably worth and enough to encourage skilled attorneys to take cases for consumer rights without rewarding undue delay."

¶ 20    On July 20, 2015, Ms. Kemp filed a timely notice of appeal from the court's June 19, 2015, order.

¶ 21                                ANALYSIS

¶ 22    Under section 1640, Ms. Kemp was entitled to costs and reasonable attorney fees. 15 U.S.C. §§ 1640, 1667d (1994). Where an action is based solely on a federal statute, it must be determined in accordance with federal law. *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 190 (2003).

¶ 23                    I. Applicable Standards of Review

¶ 24    An award of attorney fees pursuant to a fee-shifting statute is reviewed for an abuse of discretion. *Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir. 1998). This deferential standard of review " 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' " *Jaffee*, 142 F.3d at 412 (quoting *Hensley*, 461 U.S. at 437). An abuse of discretion occurs " 'when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.' " *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 336 (1st Cir. 1997) (quoting *Foster v. Mydas Associates, Inc.*, 943 F.2d 139, 143 (1st Cir. 1991)).

¶ 25    A court's discretion is not without limits. *Perdue*, 559 U.S. at 558. "It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination ***." *Perdue*, 559 U.S. at 558. While the explanation need not be painstaking, "the order awarding fees, read against the backdrop of the record as a whole, must expose the district court's thought process and show the method and manner underlying its decisional calculus." *Coutin*, 124 F.3d at 337. This principle is especially important in cases where the court substantially reduced the documented time. *Coutin*, 124 F.3d at 337. Otherwise, the reviewing court will be unable to conduct an adequate review and remand for further findings will be required. *Coutin*, 124 F.3d at 337.

¶ 26    Ms. Kemp asserts that the circuit court's methodology in calculating attorney fee awards is reviewed *de novo*. See *Jaffee*, 142 F.3d at 412 (an alleged legal error in denying attorney fees is reviewed *de novo*). To the extent that the circuit court's methodology presents a question of law, we agree. *Jaffe*, 142 F.3d at 412 (questions of law are reviewed *de novo*).

¶ 27                                II. Discussion
¶ 28           A. Calculation of the Reasonable Amount of Attorney Fees (Issues II and III)
¶ 29                        1. *Reliance on the Johnson Factors*
¶ 30    Ms. Kemp contends that the circuit court erred when it disregarded the lodestar and relied on the factors in *Johnson* in its determination of a reasonable attorney fee amount. Those factors are as follows: "(1) the time and labor required; (2) the novelty and difficulty of the

questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability'' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

¶ 31    The lodestar method is the preferred method for determining a reasonable fee. *Coutin*, 124 F.3d at 337. The lodestar method contemplates judicial assessment of " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' as the starting point in constructing a fee award." *Coutin*, 124 F.3d at 337 (quoting *Hensley*, 461 U.S. at 433). In *Perdue*, the Supreme Court held that, in determining a reasonable attorney fee, the lodestar method was preferred over the *Johnson* factors as a more objective test, permitting meaningful judicial review and producing reasonably predictable results. *Perdue*, 559 U.S. at 551-52. However, *Perdue* did not hold that any consideration of the *Johnson* factors was error. Instead, " 'to the extent that any of [the *Johnson* factors] has already been incorporated into the lodestar analysis, we do not consider [those factors] a second time.' " *McFee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013) (quoting *Eastern Associated Coal Corp. v. Director, Office of Workers' Compensation Programs*, 724 F.3d 561, 570 (4th Cir. 2013), citing *Perdue*, 559 U.S. at 552).

¶ 32    In the present case, the circuit court's memorandum opinion and order reflects that the court clearly understood the limited use of the *Johnson* factors and utilized the lodestar in its calculation of a reasonable attorney fee amount.

¶ 33                                   2. *Adjustment of the Lodestar*

¶ 34    Ms. Kemp contends that the lodestar figure of $1,074,163 was the reasonable amount of attorney fees to be awarded in this case. There is a strong presumption that the lodestar figure is reasonable. *Perdue*, 559 U.S. at 553-54. Ms. Kemp asserts that the reasonableness of the lodestar figure in this case is supported by the presumption and by the seven affidavits from other attorneys attesting to the reasonableness of her attorney's hours and hourly rate. Having established the reasonableness of the lodestar figure, Ms. Kemp maintains that the burden of proof then shifted to TMCC to prove that the lodestar figure was unreasonable. She maintains that the circuit court failed to require TMCC to meet its burden of proof that the lodestar figure was unreasonable.

¶ 35    The affidavits from other attorneys were filed in support of Ms. Kemp's petition for attorney fees prior to the appeal in *Robinson III*, in which the plaintiffs lost all of their joint claims. Those affidavits did not address the reasonableness of the hours spent on Ms. Kemp's individual CLA claim as opposed to the reasonableness of the hours spent on all of the CLA claims raised in the plaintiffs' lawsuit. Moreover, Ms. Kemp overlooks the circuit court's ability to modify the initial lodestar figure.

¶ 36    While still adhering to the time-and-rate based method in the initial lodestar calculation, the court can "segregate time spent on certain unsuccessful claims [citation] [and] eliminate excessive or unproductive hours," resulting in a lodestar that differs substantially from the fee requested by the prevailing party. *Coutin*, 124 F.3d at 337; see *Hensley*, 461 U.S. at 435. As the Court in *Hensley* explained:

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.

¶ 37    The Court in *Hensley* disapproved of awarding attorney fees for unsuccessful claims that were unrelated to the successful claims. *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983). While there was no certain method of determining whether or not claims are related, "the starting point for separating an *un*related, unsuccessful claim from a related, unsuccessful claim is to determine whether a particular unsuccessful claim shares a 'common core of facts' with the successful claim or is based on a 'related legal theory.' " (Emphasis in original.) *Mary Beth G.*, 723 F.2d at 1279 (citing *Hensley*, 461 U.S. at 437 n.12). In making that determination, the court in *Mary Beth G.* found it useful to focus on whether the claims sought relief for essentially the same course of conduct. Applying this analysis, the court found that:

"an unsuccessful claim will be *un* related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." (Emphasis in original.) *Mary Beth G.*, 723 F.2d at 1279.

¶ 38    Ms. Kemp maintains that the circuit court conceded that all of the claims raised in this case arose out of a common core of facts, but nonetheless concluded erroneously that her individual CLA claim was unrelated to the other federal and state claims raised in the complaints filed in this case. She further maintains that she raised only one claim which was divided into three parts, one of which was her CLA sales tax amount. Ms. Kemp's argument is based on a misreading of the circuit court's opinion in this case. The circuit court made no such concession but merely noted this court's reference to "the core operative facts," in *Robinson I*. *Robinson I*, 315 Ill. App. 3d at 1092 ("The core operative facts for plaintiffs' causes of action in *Ramirez* [Ramirez v. Toyota Motor Credit Corp., No. 752044-8,][2] and in the present case are identical—federal [CLA] violations arising from the plaintiffs' 1993 leases with [TMCC].").

¶ 39    Moreover, the plaintiffs' joint state and federal claims were based on the failure of the motor vehicle leases to disclose or to disclose in a meaningful sequence the penalties for early termination of the leases. They sought to certify a class on these claims. In *Robinson I*, this court recognized that Ms. Kemp's individual claim was distinct from the other claims, finding that her claim was "an individual claim, not common to the class." *Robinson I*, 315 Ill. App. 3d at 1093. We noted that the plaintiffs' other CLA claims "do not involve individual claims but, rather, involve common issues regarding defendants' leases." *Robinson I*, 315 Ill. App. 3d at 1093. We further noted that those claims had the "same core of operative facts" as did the claims in *Ramirez*. *Robinson I*, 315 Ill. App. 3d at 1093. Thus, as early as this court's 2000

---

[2]The class action suit in California.

decision in *Robinson I*, there was a recognition that Ms. Kemp's CLA sales tax claim was unrelated to the claims for which the plaintiffs sought to certify the class. The supreme court reversed this court's determination that the plaintiffs' joint CLA claims were *res judicata* but declined to rule on the substantive sufficiency of those claims. *Robinson II*, 201 Ill. 2d at 416. This court's determination that Ms. Kemp's individual claim was not barred by *res judicata* was noted by the supreme court, but it was not at issue in the appeal. See *Robinson II*, 201 Ill. 2d at 411.

¶ 40        Ms. Kemp further argues that her CLA sales tax claim was related to the unsuccessful claims, since it was part of the failure to disclose claim. The sales tax amount was disclosed in her lease but in the wrong amount. The course of conduct aimed to be remedied in the present case was to require the authors of motor vehicle leases to make the disclosures clear and conspicuous, not to improve their arithmetic skills. Ms. Kemp's claim was a "distinctly different" claim from the plaintiffs' joint claims. See *Hensley*, 461 U.S. at 434. Therefore, Ms. Kemp's individual claim was not related to the failure to disclose claims that were unsuccessfully litigated.

¶ 41        Ms. Kemp agrees that in determining the reasonableness of the attorney fees, the most important factor is success. Ms. Kemp maintains that she achieved complete success on her individual CLA claim in that it resulted in the enforcement of a congressional right benefiting the public, and she received the maximum amount in damages. Relying on *Hensley*, she argues that the circuit court erred by not awarding attorney fees as calculated by the lodestar.

¶ 42        Where a plaintiff has obtained excellent results, a fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *Hensley*, 461 U.S. at 435. However, where the plaintiff achieved only partial or limited success, the product of hours spent on the litigation as a whole multiplied by a reasonable hourly rate may be an excessive amount. *Hensley*, 461 U.S. at 436. As the Court in *Hensley* observed, "Congress has not authorized an award of fees whenever it is reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436 (had the plaintiffs in a civil rights case prevailed on only one of their six general claims, a fee award based on the claimed hours clearly would have been excessive). In other words, "where the plaintiff achieved only limited success, the *** court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.

¶ 43        This is not a case in which Ms. Kemp, in good faith, raised alternative arguments and succeeded on her claim even though some of those arguments were rejected. At the end of 20 years of litigation, only Ms. Kemp's individual CLA claim was upheld. Her individual claim was unrelated to the joint federal and state claims. It was those unrelated claims and ultimately completely unsuccessful claims that occupied the vast majority of time since the commencement of this litigation. In such a case, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440. In accord with the analysis in *Hensley*, Ms. Kemp's success on her individual CLA claim did not support the award of fees initially calculated by the lodestar.

¶ 44        Ms. Kemp's reliance on *United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989), is misplaced. In that case, the United States Football League (USFL) succeeded on only one of its antitrust violation claims against the defendant, and the jury awarded $1 in damages. The district court trebled the damage award to $3 and awarded

- 8 -

attorney fees of $5.5 million. *United States Football League*, 887 F.2d at 410. On review, the court of appeals observed that the USFL claims involved a common core of facts. *United States Football League*, 887 F.2d at 414. In affirming the district court's determination of a reasonable amount of attorney fees, the court noted that the USFL had "exercised billing judgment and in recognition of its limited success, the USFL had already reduced the basic lodestar by twenty percent." *United States Football League*, 887 F.2d at 415. In addition, the USFL had used historic billing rates rather than current ones and understated the time actually spent on the litigation. *United States Football League*, 887 F.2d at 415. The district court reduced the lodestar amount by an additional 30%—10% for vague entries and 20% for the USFL's limited success. *United States Football League*, 887 F.2d at 415. The court of appeals found no abuse of discretion where the district court did not exclude specific hours spent on matters not fully compensable, instead choosing to reduce the lodestar. *United States Football League*, 887 F.2d at 414; see *Hensley*, 461 U.S. at 436-37 (the reviewing court may attempt to identify specific hours that should be eliminated or simply reduce the award to account for limited success).

¶ 45    Unlike *United States Football League*, the present case does not involve related claims. The circuit court found that Ms. Kemp's counsel made no effort to cull time from his billing records. See *Hensley*, 461 U.S. at 434 (the prevailing party's counsel should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary). Moreover, contrary to her own argument, *United States Football League* supports the use of reducing the size of the award by a percentage amount to achieve a reasonable amount of attorney fees.

¶ 46    Next, Ms. Kemp contends that the circuit court erred when it failed to consider the amount of attorney fees incurred by TMCC in determining the reasonableness of the fees. The federal courts disagree about the relevance of opposing counsel's billing records in the determination of a reasonable attorney fee award. Some courts have found them relevant and probative, while others have found them either irrelevant or of little relevance. See *Marks Construction Co. v. Huntington National Bank*, No. 1:05CV73, 2010 WL 3418329 (N.D.W.V. Aug. 27, 2010) (collecting cases); see also *Deicher v. City of Evansville*, 545 F.3d 537 (7th Cir. 2008) (in *dicta*, the reviewing court found such records relevant); *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852 (7th Cir. 2009) (no abuse of discretion in denying motion to produce billing records where case was resolved quickly); *Farfaras v. Citizens Bank & Trust Co. of Chicago*, 433 F.3d 558 (7th Cir. 2006) (records were relevant, but the district court was able to determine a reasonable fee without them); *Quinones v. City of Evanston*, No. 91 C 3291, 1995 WL 656690 (N.D. Ill. Nov. 6, 1995) (relevant, but both parties were seeking attorney fees).

¶ 47    The amount of attorney fees spent by a defendant may be relevant in a fee-shifting case. Nonetheless, it was of little relevancy here. According to Ms. Kemp, the circuit court acknowledged that TMCC probably spent over $1 million but ignored that factor in determining whether her attorney fees of in excess of $1 million was reasonable. However, the attorney fee award was limited to the attorney fees incurred in Ms. Kemp's individual CLA claim. Therefore, the fact that TMCC spent $1 million in defending against the plaintiffs' lawsuit was not relevant to what a reasonable amount of attorney fees in litigating Ms. Kemp's individual CLA claim.

¶ 48 Ms. Kemp complains that the circuit court ignored the difficulty in litigating consumer cases and reduced her attorney fees because it considered the issue in her case as having a lower difficulty and novelty factor and required less skill. In its opinion and order, the circuit court noted that compared to other cases involving police use of excessive force or involuntarily committed patients, Ms. Kemp's case, which involved the wrong amount of sales tax, was "much more mundane." However, the court agreed it was not its place to draw a distinction between civil rights and consumer rights. In the end, what matters was that the attorney fee be reasonable. The circuit court's award of attorney fees was reasonable in light of Ms. Kemp's one successful claim.

¶ 49 Finally, Ms. Kemp contends that the circuit court disregarded the admonishment in *Perdue* and erroneously applied a *Johnson* factor, *i.e.*, the attorney's ability and reputation, in determining the reasonableness of the fee amount. She points to the circuit court's references to other cases in which her attorney's performance on behalf of other clients was criticized and asserts that the court ignored the seven uncontested affidavits in determining a reasonable fee.

¶ 50 In *Perdue*, the Supreme Court stated that "the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.' " *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)). The circuit court correctly noted in its memorandum and order that the *Johnson* factor of an attorney's ability and reputation is considered in the lodestar calculation. In any event, notwithstanding the negative references, the circuit court granted Ms. Kemp's request that her attorney's hourly rate be set at $395.

¶ 51 It is clear from the circuit court's memorandum opinion that it used the lodestar in calculating a reasonable attorney fee award in this case. The court's reference to the factors in *Johnson* were clearly in line with the limited use of those factors as expressed by the Supreme Court in *Perdue*. Accordingly, no error of law occurred in the circuit court's application of the lodestar, and we find no abuse of discretion in the court's determination of the amount of reasonable attorney fees due Ms. Kemp in this case.

¶ 52 B. Costs, Fee Petition Proceedings, and Arbitrary Fee Reduction (Issue I)

¶ 53 1. *Costs*

¶ 54 Ms. Kemp contends that the circuit court erred by refusing to reimburse her for such costs as photocopying, mailing, and binding of materials. She maintains that federal law requires that she be reimbursed for these costs. See 15 U.S.C. § 1640(a)(3) (2006) (a creditor is liable "in the case of any successful action to enforce the foregoing liability *** [for] the costs of the action, together with a reasonable attorney's fee as determined by the court"). In reviewing an award of costs, the court determines, first, whether the costs are recoverable and, second, whether the costs are reasonable, both in amount and necessity. *Mary Beth G.*, 723 F.2d at 1282.

¶ 55 Ms. Kemp relies on several cases that she argues establish that the costs disallowed by the circuit court were in fact recoverable in this case. In *Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995), the district court limited the amount of costs to be reimbursed finding that plaintiff had been adequately compensated by the generous attorney fee awards. *Abrams*, 50 F.3d at 1222-23. On review, the court of appeals reversed, finding that the district court had applied the wrong standard. On remand, the district court was ordered to determine which

expenses were considered "overhead," and thus included in an award of attorney fees, and which expenses were considered the cost of litigation and recoverable as costs. *Abrams*, 50 F.3d at 1224-26. Unlike the district court in *Abrams*, in the present case, the circuit court refused to reimburse Ms. Kemp for items that it found were part of the overhead and included in the attorney's hourly rate.

¶ 56    In *Miller v. Alamo*, 983 F.2d 856 (8th Cir. 1993), the court construed a different federal costs statute. The court of appeals found that costs such as traveling, mailing, and photocopying were recoverable under 26 U.S.C § 7430 (1988), which allowed as costs out-of-pocket expenses which for lawyers normally billed their clients separately. *Miller*, 983 F.2d at 862.

¶ 57    In *Burda v. M. Ecker Co.*, 2 F.3d 769 (7th Cir. 1993), the court of appeals held that the $505.74 in costs for photocopying, postage, telephone, delivery charges, and computerized legal research were fully documented and properly recoverable by a prevailing party under 28 U.S.C § 1920 (1988). The court found no basis for disturbing the district court's award of costs. *Burda*, 2 F.3d at 778.

¶ 58    Even when costs are statutorily recoverable, the reviewing court applies the abuse of discretion standard to whether the costs were reasonable and necessary. *Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 454 (7th Cir. 1998). In light of this highly deferential standard, we must credit the circuit court with a familiarity with this case that eclipses our own. The circuit court was in the best place to determine the reasonableness and necessity for the expenses for which Ms. Kemp sought reimbursement. This is not a case where the court applied the wrong standard or failed to explain for the benefit of the reviewing court the denial of an award of costs. Instead, the circuit court set forth its reasoning in detail for declining to award certain costs to Ms. Kemp. Just as the court in *Burda* upheld the district court's ruling awarding costs, we find no basis for disturbing the circuit court's refusal to reimburse Ms. Kemp for the additional costs she sought.

¶ 59                          2. Denial of Fees for Fee Petition Proceeding

¶ 60    Ms. Kemp contends that the circuit court erred when it denied her attorney fees for the fee petition proceeding. Ms. Kemp devotes one paragraph to her contention and limits her argument to stating that "[t]he lower court denied compensation for the fee petition proceeding" and suggesting that this court "might decide to remand." She relies on three federal cases that stand for the general proposition that the time spent on establishing the right and amount of the fee is compensable but are otherwise distinguishable from the case before us. See *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (remand for a redetermination of the fees-on-fees, employing the proper standard where the district court used the lodestar and a flat amount); *Bond v. Stanton*, 630 F.2d 1231 (7th Cir. 1980) (a fee on fee award could not be defeated by the fact that the defendants' argument contesting the fee award had merit); *Prandini v. National Tea Co.*, 585 F.2d 47, 54 (3d Cir. 1978) (appellant attorneys were entitled to be compensated "to the extent that time was reasonably necessary to obtaining a reasonable fee award").

¶ 61    None of the above fact situations are present in the case before us. In the present case, the trial court did not deny Ms. Kemp an award for the time spent establishing the right to an attorney fee award because it believed that time spent to procure an attorney fees award was not compensatory, or because TMCC had a "good-faith" argument to oppose an award of

attorney fees, or because the trial court's methodology in determining a fee on fee award was inconsistent.

¶ 62      Moreover, those cases address the specific denial for compensation for time spent in establishing the right to an award of fees. The trial court awarded Ms. Kemp attorney fees and costs for her successful individual CLA claim. The court denied any fees or costs incurred after June 10, 2011, in light of the unsuccessful appeal in *Robinson III*. In *Bond*, the court recognized that the award of attorney fees would be subject to potential dilution unless the efforts of *successful* plaintiffs to obtain fees are includable in a fee award. *Bond*, 630 F.2d at 1236. Since none of the fees and costs incurred after June 10, 2011, were awarded on the basis of the lack of success, Ms. Kemp fails to persuade us that she is entitled to compensation for preparing a fee petition for work for which the trial court denied compensation.

¶ 63      3. Arbitrary Denial of Attorney Fees

¶ 64      Ms. Kemp contends that the circuit court erred when it cut 97% of the attorney fees she requested without referring to specific time entries. She cites several cases for the proposition that a court must not cut attorney fees by applying an arbitrary percentage. In *Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984), the district court determined that the attorney fee amount sought was excessive and cut the fees by 50%. The court of appeals held that such a method might be appropriate where the fee amount was small. However, where the amount requested was in excess of $50,000,

> "the judge must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage. He has to make a judgment—considering the nature of the case and the details of the request, taking evidence if need be, and defending his judgment in a reasoned (though brief) opinion—on what the case should have cost the party who submitted the request." *Heiar*, 746 F.2d at 1204.

¶ 65      Nonetheless, where a party has achieved only limited success, the court may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success. *Hensley*, 461 U.S. at 436-37. While the circuit court did not specify each entry it determined was excessive, the court detailed its reasoning for eliminating work which was unrelated to Ms. Kemp's individual CLA claim or was otherwise not compensable. See *Hensley*, 461 U.S. at 437 (when adjusting the amount of attorney fees on the basis of the limited nature of the relief, the court should make clear that it considered the relationship between the amount of the fees awarded and the results obtained). That the circuit court did so in this case is amply demonstrated by its memorandum opinion and order.

¶ 66      In sum, we find no error or abuse of discretion in the circuit court's award of costs or its denial of fees for the fee petition proceedings. We find that the circuit court did not act arbitrarily in its reduction of the attorney fees in this case.

¶ 67      C. Denial of Fees for Appellate Work (Issue IV)

¶ 68      Ms. Kemp contends that the circuit court erred in denying her attorney fees for any of the appellate work this case. Ms. Kemp argues that the circuit court's denial of the fees was based on the lack of success instead of whether it was reasonable for her to pursue an appeal. *People Who Care v. Rockford Board of Education, School District No. 205*, 90 F.3d 1307, 1314 (7th

Cir. 1996) (the court's focus should be on the reasonableness of the attorney's actions rather than the success or failure of the actions).

¶ 69     We need not determine the reasonableness of the plaintiffs' decision to appeal from the circuit court's June 10, 2011, order. In *Robinson III*, 2012 IL App (1st) 111889, this court's remand was limited to a determination of an award of attorney fees and costs on Ms. Kemp's individual CLA claim. *Robinson III*, 2012 IL App (1st) 111889, ¶ 84. Ms. Kemp's assertion that, as a result of the appeal in *Robinson III*, she won her individual claim and an award of attorney fees and costs on that claim is belied by the record. Her individual claim was not at issue, and it was necessary to remand for an award of fees because the fee award we vacated included fees for the joint claims that had been reversed. *Robinson III*, 2012 IL App (1st) 111889, ¶ 84.

¶ 70     As to the first appeal in this case (*Robinson I*), Ms. Kemp argues that the circuit court erred in refusing to compensate her for the time her attorney spent to protect her claim between 1995 and 2008. In *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991), the court of appeals held that plaintiffs should be compensated for attorney fees incurred for services that contribute to the ultimate victory in the lawsuit. *Cabrales*, 935 F.2d at 1052. "[E]ven if a specific claim failed, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Cabrales*, 935 F.2d at 1052 (citing *Hensley*, 461 U.S. at 435).

¶ 71     Contrary to Ms. Kemp's argument, the circuit court found that time spent in 1998 defending against the dismissal of her individual claim in the circuit court and the appeal (*Robinson I*) where the dismissal of her individual claim was reversed was compensable. The court found that the time spent on the appeal to the supreme court was not compensable. We agree, since only the joint claims were at issue in that appeal. See *Robinson II*, 201 Ill. 2d at 405 (the issues before the court were whether the joint claims were barred by *res judicata* and whether the plaintiffs had stated a cause of action under the Consumer Fraud Act); see also *Hensley*, 461 U.S. at 434-35 (prevailing party was not entitled to compensation for attorney fees expended on ultimately unsuccessful claims).

¶ 72     Ms. Kemp argues that she is entitled to attorney fees for the appeal to the supreme court because the plaintiffs achieved a benefit for Illinois consumers in that the supreme court reduced the number of factors consumers must prove in order to succeed on an unfair practices claim under the Consumer Fraud Act. See *Robinson II*, 201 Ill. 2d at 418. However, the CFA claims were joint, and the supreme court's ruling did not benefit Ms. Kemp's individual claim.

¶ 73     The circuit court considered that Ms. Kemp's individual claim was an extremely minor one compared with issues on the plaintiffs' joint claims raised in *Robinson I* and awarded 25 hours, or 10% of the total hours claimed. See *Hensley*, 461 U.S. at 436-37 (trial court has the discretion to eliminate specific hours or simply reduce the award to account for the limited success).

¶ 74     In sum, we find no abuse of discretion by the circuit court in its determination of the compensable time with regard to the appellate proceedings in this case.

¶ 75                                         CONCLUSION

¶ 76     For all of the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 77        Affirmed.